IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01972-WYD-MJW

JOSEPH FLEMING,

    Plaintiff,

v.

DR. C. L. POLLAND, Director,
CAMACHO, Physician's Assistance,
CURTIS, Physician's Assistant,
UNKNOWN SUPERVISOR, ADX Florence,

    Defendants.

---

### RECOMMENDATION ON
**MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) BY STACEY CURTIS
(Docket No. 51)
and
PARTIAL MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) BY RON CAMACHO
(Docket No. 52)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

    This case is before this court pursuant to an Order of Reference to Magistrate Judge issued by Chief Judge Wiley Y. Daniel on November 4, 2009. (Docket No.15 ).

    The operative pleading is the pro se incarcerated plaintiff's Second Amended Complaint (Docket No. 42) filed on February 2, 2010, in which the plaintiff asserts the following. Plaintiff was housed at the FCI Florence facility which is composed of inmate housing for various security levels. At the camp facility, which can hold approximately

540 inmates, inmates are put on work details that serve the ADX and other portions of the Florence facility.  If the number of camp inmates available for work falls below the minimum needed to meet the basic needs of the ADX inmates, the prison staff must perform such duties by filling in to insure that these basic needs are met.  The ADX staff are very reluctant to perform these types of tasks when inmate labor can be ordered to do them.  At the time plaintiff's appendix ruptured, Camp Florence had approximately 350 inmates, which was right at or below the minimum number of inmates needed to provide services to the ADX.  The shortage of inmate labor causes ADX staff to instruct Camp Medical staff to stop giving camp inmates Medical Work Passes and to deny medical care so that the work detail would be filled by camp prisoners at all times, and prison staff would not have to perform any duties.

On April 23, 2007, plaintiff began experiencing pain in the lower right abdomen which persisted such that he planned to seek medical attention by going to the medical infirmary.  On August 27, 2007, at 9:45 a.m. he was examined by defendant PA. Camacho who diagnosed symptoms consistent with a ruptured appendix or appendicitis.  Camacho confirmed this diagnosis with defendant Dr. Polland via a telephone conference, and Dr. Polland left a standing order that plaintiff be taken to the hospital if his symptoms progressed.  That diagnosis was later confirmed by St. Thomas Hospital staff that plaintiff's appendix had ruptured shortly before August 27.

Again on August 27, 2007, in the afternoon, plaintiff returned to the medical department in extreme pain, and he was again seen by Camacho.  Plaintiff requested to be taken to the hospital as diagnosed earlier in the day by Dr. Polland, but Camacho refused to follow the standing order and refused to take plaintiff to the hospital.

Camacho recommended that plaintiff take stool softeners that might relieve some of his pain because Camacho believed that plaintiff might also be constipated.

The next morning at about 6:00, plaintiff returned to the infirmary, still in extreme pain, and was seen by Camacho. Plaintiff informed Camacho that his symptoms were continuing and his condition was worsening. Plaintiff asked to be taken to the hospital as ordered by Dr. Polland. Camacho again refused to follow the standing order. Plaintiff asked Camacho to contact Dr. Polland and inform him of plaintiff's worsening condition. Camacho refused. Plaintiff asked Camacho to provide him with a pass allowing him to miss work so that he would not be forced to work. Camacho refused. During this visit, Camacho did not take any vital signs and made no entries into the medical records.

On August 29, 2007, at 6:00 a.m., plaintiff was still in unrelenting pain in his lower abdomen. Plaintiff was again seen in the infirmary by Camacho, who again refused to send plaintiff to the hospital and to contact Dr. Polland. Plaintiff expressed his frustration to Camacho for not receiving medical treatment, and Camacho became angry at plaintiff, dismissed plaintiff from the infirmary, and stated, "If you are going to act this way I am not going to do anything for you." Camacho again refused to give plaintiff a pass relieving him from his work, did not take vital signs, and dismissed plaintiff without any medical treatment. Camacho made no entry into the medical records that would record plaintiff's progressing condition.

The following morning at 6:45, plaintiff again arrived at the infirmary in great pain and feverish. Camacho was not working that day, and plaintiff was seen by defendant Curtis. Plaintiff informed Curtis of his situation, that he had been diagnosed by Dr.

Polland and Camacho with symptoms matching appendicitis, and that Dr. Polland had left a standing order that plaintiff be taken to the hospital if his condition worsened. Curtis refused to take plaintiff to the hospital as ordered by Dr. Polland, refused to contact Dr. Polland, and refused to excuse plaintiff from work. Plaintiff expressed frustration at the lack of medical treatment, and Curtis dismissed him from the infirmary. Curtis did not take any vital signs.

The next morning at 7:20, plaintiff again went to the infirmary to try to get medical treatment. Plaintiff told Camacho that he was in severe pain, feverish, and his symptoms were worsening. Plaintiff asked to be taken to the hospital, but Camacho refused. He also refused to contact Dr. Polland. Plaintiff informed Camacho that he could not work any more or function and that he needed immediate medial treatment and to be taken off the work detail. Camacho refused and ordered plaintiff not to come to the infirmary any more and to go back to work. Camacho did not take any vital signs of the plaintiff.

Between September 1 and 9, 2007, plaintiff was informed that he had to work in the ADX work details or he would be sent to isolation. Plaintiff could barely function, and other inmates assisted him with his duties.

Plaintiff was seen by Camacho at the infirmary on September 6, 2007, at which time Camacho told plaintiff that an ADX supervisor had told him not to allow inmates off work details for medial reasons.

While plaintiff was on his work detail on September 10, 2007, at 7:00 a.m., he collapsed and could no longer function. Correctional Officers Sears and Johns who were supervising the detail called for medical emergency. Camacho answered the call

and informed the officers that he knew who plaintiff was and refused to come pick him up or allow him to be seen by medical staff. Sears and Johnson appeared surprised that anyone would be denied medical care in this fashion. Officers relieved plaintiff from this work detail.

Despite plaintiff's life-threatening medical condition, there was no follow-up by Dr. Polland.

The following day, at 1:00 a.m., plaintiff fell from his bunk, feverish and delirious from unbearable pain. Plaintiff was rushed to St. Thomas Moore Hospital where he underwent surgery. Hospital records show plaintiff suffered from untreated appendicitis and that the infection spread throughout his internal organs, including his colon. His untreated conditions caused him internal infection, excruciating pain, fever, and nausea. By the time he finally arrived at the hospital, he was close to death. Due to the delay in receiving adequate medical care, infection had set in and damaged his internal organs, and a substantial part of his colon had to be surgically removed.

Plaintiff alleges that defendants Polland, Curtis, and Camacho were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment and were negligent or grossly negligent. In addition, plaintiff claims that "[u]nknown Supervisor, upon information and belief, developed customs and practices, using his/her supervisory powers to influence medical staff's treatment of sick inmates, causing or influencing the deliberate indifference of the other defendants." (Docket No. 42 at 9-10).

Plaintiff seeks compensatory and punitive damages and costs. (Docket No. 42 at 10-11).

Now before the court for a report and recommendation are the following two dispositive motions. First, there is a Motion to Dismiss Pursuant to Rule 12(b)(1) by Stacey Curtis (Docket No. 51), to which plaintiff filed a response (Docket No. 59), and defendant Curtis filed a reply (Docket No. 61). Defendant Curtis seeks dismissal of all claims against her in the Second Amended Complaint on the following grounds: (1) sovereign immunity bars plaintiff's official capacity claims for damages and (2) plaintiff may not bring an individual liability claim against her because she is a commissioned officer of the Public Health Services. Second, there is a Partial Motion to Dismiss Pursuant to Rule 12(b)(1) by Ron Camacho (Docket No. 52), to which plaintiff filed a response (Docket No. 58), and defendant Camacho filed a reply (Docket No. 60). Defendant Camacho seeks a dismissal of the official capacity claims against him in the Second Amended Complaint. The court has very carefully considered all of these motion papers as well as the court's file and applicable statutes, Federal Rules of Civil Procedure, and case law. The court now being fully informed makes the following findings, conclusions, and recommendation that both motions be granted.

Rule 12(b)(1):

> empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994). Statutes conferring jurisdiction on federal courts are to be strictly construed. *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

> Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. *See id.* at 1003. A court's consideration of evidence outside the pleadings will not convert the the motion to dismiss to a motion for summary judgment under Rule 56. *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp. 2d 1091, 1094-95 (D. Colo. 2001).

Since the plaintiff is not an attorney, his pleading has been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

**Official Capacity Claims**

Both Curtis and Camacho correctly assert that sovereign immunity bars plaintiff's official capacity claims against them for damages. Such claims are construed as claims against the United States. Atkinson v. O'Neill, 867 F.2d 589, 590 (10th Cir. 1989). The United States is a sovereign and, as such, is immune from suit without its prior consent. United States v. Shaw, 309 U.S. 495, 500-01 (1940); Amoco Oil Co. v. United States E.P.A., 959 F. Supp. 1318, 1320 (D. Colo. 1990). The United

States is not subject to suit absent an express statutory waiver of its sovereign immunity. Atkinson, 867 F.2d at 590. The plaintiff here has not made a showing that the United States has waived its sovereign immunity by consenting to being sued. Therefore, it is recommended that the plaintiff's claims for damages against defendants Curtis and Camacho in their official capacities be dismissed with prejudice. See Hatten v. White, 275 F.3d 1208, 1210 (10th Cir. 2002) ("A *Bivens* action may not be brought against federal agencies or agents acting in their official capacities.").

The court notes that in his responses, plaintiff asserts that he is not seeking monetary damages from these defendants in their official capacity. Rather, he asserts that

> [t]he purpose of [his] official capacity claims is to obtain injunctive relief. . . . [He] seeks injunctive relief against these defendants as proxies of United States whose pattern and practice of constitutional rights violations is carried out, in part by [defendants] in [their] official capacity.
>
> [Plaintiff] intends to show at trial that FCC Florence has designed a system of inmate labor where the facility is completely dependant on inmates housed at lower security classifications to meet the basic daily needs of food preparation and meal delivery for higher security inmates. This overdependence on inmate labor, coupled with periodic shortages in the inmate labor pool, contributed to the denial of emergency medical care for the purpose of keeping these work details fully staffed in order to maintain the normal operation of the Florence facility. Under these conditions, Supervisor(s) i.e. UNKNOWN SUPERVISOR of the Florence Facility orders, interferes or conspires with the Medical Staff to keep work details full by denying needed medical care, work lay-offs and other medically valid reasons an inmate should be removed from the work rosters.
>
> [Plaintiff] seeks monetary damages against the individuals who carried out this policy, but also injunctive relief to bring about a more humane system of inmate labor such that other inmates might be spared the suffering and permanent damage experienced by [plaintiff].

> [Plaintiff's] complaint included the predicate facts but did not include the words "injunctive relief" specifically in the PRAYER section. [Plaintiff] believes that ¶50 of the Second Amended Complaint would encompass such relief. However, to the extent this needs to be further clarified, Plaintiff will submit a corrected or amended complaint.

(Docket No. 58 at 1-2).

As plaintiff essentially acknowledges, however, he did not seek injunctive relief in his Second Amended Complaint. In any event, defendants correctly note in their replies that the plaintiff is no longer incarcerated at the Florence complex. Instead, he is now housed in Texas. Therefore, an award of injunctive relief would have no effect on defendants' behavior toward the plaintiff. Any request for injunctive relief would thus be moot. See Mitchell v. Estrada, 225 Fed. Appx. 737, 741 (10th Cir. 2007) ("An inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief related to conditions of confinement. . . . Because [plaintiff] has been transferred to another facility, his claims for declaratory and injunctive relief are moot.") (citing Green v. Branson, 108 F.3d 1296, 1299-1300 (10th Cir. 1997) (holding that release from prison moots claims for declaratory and injunctive relief); Love v. Summit County, 776 F.2d 908, 910 n.4, 912 (10th Cir. 1985) (indicating that the general rule applies to a transfer between prisons). "Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot-namely, where the controversy is no longer live and ongoing. . . . A claim will be deemed moot unless a proper judicial resolution settles some dispute which affects the behavior of the defendant toward the plaintiff." Herman v. Lander, 2008 WL 791936, *4 (D. Colo. Mar. 21, 2008) (quotations omitted). In addition, to the extent that plaintiff apparently seeks to have the inmate

labor system changed to prevent the suffering of other inmates, plaintiff does not have standing to sue for relief based upon the alleged deprivation of another's civil rights. Another motion by plaintiff to amend his pleading yet again would thus be futile. Therefore, it is recommended that plaintiff's official capacity claims against defendants Curtis and Camacho be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1). See Herman v. Lander, 2008 WL 791936, *4.

**Individual Capacity Claim Against Curtis**

Defendant Curtis also correctly asserts that pursuant to the Federally Supported Health Center Assistance Act, as a commissioned officer of the Public Health Services, she may not be sued in this Bivens action in her individual capacity for actions taken within the scope of her employment. She correctly notes that 42 U.S.C. § 233(a) states:

> (a) Exclusiveness of remedy
>
> The remedy against the United States provided by sections 1346(b) and 2672 of Title 28, or by alternative benefits provided by the United States where the availability of such benefits precludes a remedy under section 1346(b) of Tile 28, for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

42 U.S.C. § 233(a). Defendant has provided the Declaration[1] of Deborah A. Locke, a

---

[1] The "court has wide discretion to allow affidavits, or other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).... In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion." Holt v. U.S., 46 F.3d 1000, 1003 (10th Cir. 1995).

Senior Attorney at the Florence Complex, who has access to the employment records maintained at the Complex. She attests that at the time giving rise to the allegations in the Second Amended Complaint, defendant Curtis was, and remains, employed as a Lieutenant JG with the Public Health Service as a Registered Nurse assigned to FCC Florence, Colorado. (Docket No. 51-2 at 2). In addition, the United States Attorney has filed a Certificate of Scope of Employment stating that Curtis "was acting within the scope of her employment as a commissioned officer of the Public Health Service pursuant to the Federally Supported Health Centers Assistance Act, 42 U.S.C. § 233." (Docket No. 61-2). Therefore, plaintiff cannot bring a Bivens action against Curtis. Stine v. Fetterhoff, 2008 WL 4330572, *7 (D. Colo. Sept. 19, 2008); Muhhammad v. Sosa, 2008 WL 762253, *7 (D. Colo. Mar. 19, 2008) (Def.'s Ex. B, Docket No. 51-3). See Mele v. Hill Health Center, 609 F. Supp.2d 248, 256 (D. Conn. 2009); Seminario Navarrete v. Vanyur, 110 F. Supp.2d 605 (N.D. Ohio 2000).

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Motion to Dismiss Pursuant to Rule 12(b)(1) by Stacey Curtis (Docket No. 51) be **granted and that all claims against defendant Curtis be dismissed with prejudice**. It is further

**RECOMMENDED** the Partial Motion to Dismiss Pursuant to Rule 12(b)(1) by Ron Camacho (Docket No. 52) be **granted and that the plaintiff's claim against defendant Camacho in his official capacity be dismissed with prejudice**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve**

**and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: April 7, 2010  
      Denver, Colorado

s/ Michael J. Watanabe  
Michael J. Watanabe  
United States Magistrate Judge